UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAVID BAYANDOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 7:18-cv-00026 |
| | ) | |
| VIRGINIA POLYTECHNIC AND STATE | ) | By: Elizabeth K. Dillon |
| UNIVERSITY \| COMMONWEALTH | ) | United States District Judge |
| OF VIRGINIA, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THANASSIS RIKAKIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Javid Bayandor, a former professor at Virginia Polytechnic Institute and State University (Virginia Tech), alleges that Virginia Tech and the Commonwealth of Virginia (collectively "Virginia Tech") and its provost, Thanassis Rikakis, discriminated and retaliated against him due to his disability and/or national origin[1] by subjecting him to unjustified audits, not awarding him tenure, failing to follow the tenure appeal process in Virginia Tech's faculty handbook, and wrongfully terminating him.

This matter is before the court on three motions. First, defendants have filed a joint motion to dismiss, which has been fully briefed and was argued before the court. (Dkt. No. 11.) Second, on the same day he responded to defendants' motion to dismiss, Bayandor filed a motion for leave to file an amended complaint and attached his proposed first amended complaint. (Dkt. No. 21.) Defendants did not file a response in opposition and noted at the

---

[1] In the proposed amended complaint, plaintiff substitutes race for national origin in most instances.

hearing that they recognized that opposition to such a motion is generally not fruitful given the lenient standard. Defendants' briefing as to the motion to dismiss addressed only the original complaint, and, while the parties touched on the proposed amended complaint, defendants made clear that they were arguing to dismiss the original complaint, as filed. All parties recognized, and plaintiff made clear at the hearing, that plaintiff was withdrawing his claims in Count IV (*Bowman* claim) and Count VI (Title VI claim), so those claims were not argued and are not considered herein. Third, after the hearing, Bayandor filed a motion for leave to supplement the record regarding his opposition to defendants' motion to dismiss, which defendants opposed, in part. (Dkt. No. 27.)

For the following reasons, the court will grant in part and deny in part Bayandor's motion for leave to supplement the record, and it will grant defendants' motion to dismiss, although three claims will be dismissed without prejudice. The court will also grant plaintiff's motion for leave to amend but will not allow the filing of the proposed amended complaint that was submitted with the motion, for the reasons stated herein. Instead, plaintiff will be granted leave to file a newly amended complaint with regard to the claims that are dismissed without prejudice.

I. INTRODUCTION[2]

In October 2009, Virginia Tech hired Bayandor, who was tenured at his previous university, as an untenured Associate Professor of Mechanical Engineering. Bayandor's national origin is Iranian, and his race is Western Asian/Middle Eastern. Bayandor alleges that he felt "ostracized at times" by Virginia Tech's "discriminatory animus against his national origin," an animus that Virginia Tech has a "history of." (Compl. ¶¶ 10–11, Dkt. No. 1.) Furthermore, "[t]hroughout his career [there], Dr. Bayandor was subjected to numerous and unwarranted

---

[2] The court takes these facts from Bayandor's complaint. (Dkt. No. 1.) Because defendants make statute-of-limitations arguments regarding Bayandor's Rehabilitation Act claims, the court notes key dates.

investigations and audits, which similarly situated American or Caucasian faculty members did not experience." (Compl. ¶ 12.)

Bayandor was involved in a car accident in January 2011 that caused him to suffer left shoulder, spine, and nervous system damage. Virginia Tech granted Bayandor an accommodation to allow him to recover, and he did not work actively for the fall 2011 or spring 2012 terms. It appears that Bayandor returned to work for the fall 2012 term.

In February 2013, Bayandor applied for, and received, a one-year extension regarding his candidacy for tenure, known as a stop clock period, in order to "undergo medical procedures and help him with recovery." (Compl. ¶¶ 17–18.) Bayandor alleges that he was asked more than once to provide an updated dossier and status report throughout the one-year extension, even though such reviews were not supposed to be performed during the stop clock period. Bayandor later verbally requested an additional one-year extension of the stop clock period, "follow[ing] applicable Departmental procedures" to request it, but his requests were ignored. (Compl. ¶ 20.) After the stop clock period ended, Bayandor applied for tenure and was denied.

The complaint asserts that although obtaining tenure at Virginia Tech is the result of a "sophisticated, yet subjective" process (Compl. ¶ 26), the promotion and tenure committee (P & T committee) that reviewed Bayandor's application was manipulated by one of its members, Dr. Parker. Parker, Bayandor's direct supervisor, allegedly "manipulated" the decision-making process because he "took issue with . . . Bayandor's disability and related medical issues." (Compl. ¶ 28.) Additionally, Bayandor alleges that defendants intentionally ignored a number of his positive qualifications. (Compl. ¶ 34.) He asserts that, but for defendants' "discriminatory animus against individuals with disabilities, national origin, or both" (Compl. ¶ 32), he would have been awarded tenure.

3

After being denied tenure by the P & T committee, Bayandor met with the "college-level committee," which conducted Bayandor's first-level appeal of the P & T committee's denial of tenure, on January 21, 2016. Bayandor was informed that the college-level committee upheld the denial of tenure on January 25. Bayandor sent a letter appealing to the provost on February 24, but he did not receive a reply.

On January 19, 2017, Bayandor filed suit in the Circuit Court of Montgomery County, asserting claims against the defendants very similar to the claims in this case but under the Virginians with Disabilities Act. Virginia Tech later filed a demurrer, plea in bar, and answer. The following month, Carolyn Fulk, Principal Auditor for Special Projects, contacted Bayandor about auditing an alleged interaction between a privately-funded project and a NASA-funded project. Bayandor cooperated with the audit, and the auditor eventually concluded that Bayandor did not violate Virginia Tech or NASA rules or regulations. (Compl. ¶ 58.) Bayandor sent another letter appealing to the provost regarding his tenure at the end of March, and again he received no reply. On April 11, 2017, Bayandor's legal counsel received an email from Virginia Tech's legal counsel indicating that he would not be awarded tenure. Bayandor argues that this email was when the tenure decision became "final." The defendants, in contrast, claim the tenure decision was final on January 25, 2016, when Bayandor was informed that the college-level committee had upheld the denial of tenure.

Bayandor's employment with Virginia Tech ended in May 2017 (Compl. ¶ 63), and he voluntarily non-suited his circuit court case the same month. He filed his complaint in this court on January 22, 2018. The complaint contains five counts that plaintiff pursues: Counts I–III (against Virginia Tech): discrimination, retaliation, and failure to accommodate, respectively, in violation of the Rehabilitation Act of 1973; Count V (against all defendants): due process claim

4

for deprivation of liberty interest; and Count VII (against Provost Rikakis): discrimination and retaliation under 42 U.S.C. § 1981 based on national origin.

## II.  DISCUSSION

**A. Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it.  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

**B. Consideration of Extrinsic Documents and Bayandor's Motion to Supplement**

Typically, when a defendant moves to dismiss under Rule 12(b)(6), a court is "limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). It may, however, consider a document attached to a motion to dismiss when the document is "'integral to and explicitly relied on in the complaint,'" and when the document's authenticity is unchallenged. *Zak*, 780 F.3d at 606 (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

To their motion, defendants attach the Circuit Court of Montgomery County complaint, demurrer, plea in bar, and answer; the January 25, 2016 letter informing Bayandor that the college-level committee upheld the denial of tenure; and an untitled excerpt from the faculty handbook. Bayandor does not object to the consideration of these documents, and the court finds that it is proper to consider them at the motion to dismiss stage as they are integral to and explicitly relied on in the complaint. *See Zak*, 780 F.3d at 606.

Bayandor moves for leave to supplement the record. In particular, Bayandor asks the court to consider additional portions of the faculty handbook as well as "correspondence clarifying Defendants' interpretation of the Faculty Handbook": a February 7, 2016 letter from Bayandor to the dean of the College of Engineering at Virginia Tech; an email from said dean to Bayandor on February 25; Bayandor's February 24 letter to the provost; and a letter to the court from Bayandor himself, sent to "highlight . . . that [he] feel[s] the Virginia Tech Council skillfully dissected to a number of trivial items during the hearing and did not address as a whole [sic]." (Letter at 1, Dkt. No. 27-5.) The letter to the court also attaches Bayandor's appeal letter

6

to the P & T committee as well as the college-level committee's minutes. Defendants object only to the letter to the court. Although they object to the fact that Bayandor did not cite to certain portions of the handbook in his argument, defendants do not object to consideration of the additional handbook sections. The court will consider the handbook, correspondence with the dean, and additional letter to the provost, though some or most of these documents may make no difference in its resolution of defendants' motion. The court will not consider Bayandor's letter addressed to the court because it is not properly before the court on defendants' motion to dismiss.

**C. Bayandor's Rehabilitation Act Claims Are Barred By the Statute of Limitations.**

Based on Virginia Tech's internal audits, denial of his request for an additional one-year extension of candidacy, denial of tenure, and denial of appeal, Bayandor has alleged three claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Defendants argue that all of these claims, Counts I, II, and III, are time-barred and should be dismissed for failure to state a claim. The court agrees.

The Rehabilitation Act contains no statute of limitations, and so the limitations period must be derived from the appropriate state law. *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). According to the Fourth Circuit, the Virginia Rights of Persons with Disabilities Act provides the appropriate statute of limitations for a Rehabilitation Act claim. *See Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 225 (4th Cir. 1993). That limitations period is one year, and it "begins to run once a claim accrues." *A Soc'y Without A Name*, 655 F.3d at 348. The limitations period for a Rehabilitation Act claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Hill v.*

*Hampstead Lester Morton Court Partners LP*, 581 F. App'x 178, 180 (4th Cir. 2014) (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)).

    **1. Discrimination**

In order to state a discrimination claim under the Rehabilitation Act, a plaintiff must show that he or she was discriminated against solely on the basis of a disability. 29 U.S.C. § 794(a). Bayandor alleges that, but for his disability, "Virginia Tech would not have denied [him] tenure, resulting in his termination from employment." (Compl. ¶ 70.) Bayandor was informed that Virginia Tech denied his application for tenure on January 25, 2016. (Compl. ¶ 39.) He did not file the present action, however, until January 22, 2018. His argument that his actions after the denial somehow extended the accrual date is without merit, especially given the fact that his state court suit under the Virginians with Disabilities Act referenced the tenure denial as occurring on January 25, 2016. Thus, his discrimination claim based on the denial of tenure is time-barred.

The court rejects Bayandor's argument that, even if his claims are time-barred, the doctrines of relation-back and equitable tolling save them. Federal Rule of Civil Procedure 15(c) governs the relation-back doctrine and applies to amended and supplemental pleadings. Bayandor cites to no case law that supports his argument that the doctrine should apply to an entirely new case or that federal claims in a federal lawsuit can relate back to state claims in a previous state lawsuit.³ Furthermore, the statute of limitations may be equitably tolled only "where the plaintiff files a defective pleading within the statute of limitations period or when extraordinary circumstances beyond [plaintiff's] control made it impossible to file the claims on time." *Krane v. Capital One Serv., Inc.*, 314 F. Supp. 2d 589, 597 n.7 (E.D. Va. 2004)

---

³ Likewise, the court rejects Bayandor's argument at the hearing that providing notice of an intent to file a lawsuit extends the statute of limitations.

8

(quotations and citations omitted). Although Bayandor argues that he did not realize that Virginia Tech accepts federal funds such that the Rehabilitation Act applies to it, this professed ignorance does not serve to render his earlier pleading "defective." Count I is time-barred and will be dismissed with prejudice.

   2. **Retaliation**

To state a claim for retaliation under the Rehabilitation Act, a plaintiff must allege that: (1) he engaged in protected conduct; (2) he suffered an adverse action; and (3) a causal link exists between the protected conduct and the adverse action. *Stokes v. Benham*, No. 3:14-cv-536, 2015 WL 4139274, at *6 (E.D. Va. July 8, 2015) (quoting *A Soc'y Without A Name*, 655 F.3d at 350)). Bayandor alleges that Virginia Tech retaliated against him for revealing his disabilities and requesting accommodations by denying him tenure, denying him the ability to exercise his rights of appeal of the P & T committee decision, and subjecting him to internal audits with no purpose other than to harass, intimidate, and retaliate.

To the extent that Bayandor's retaliation claim is premised on his denial of tenure, the claim is time-barred for the reasons stated above. Bayandor's argument that the limitations period did not accrue until the completion of his "appeal" is unconvincing. The Supreme Court has emphasized that "entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 (1980). Thus, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Id.*

With respect to the alleged denial of his ability to appeal, Bayandor fails to state a claim. His complaint acknowledges that he did appeal the decision: the "college-level committee" met with him, conducted an appeal of the P & T committee's denial of tenure, and informed him that it upheld the decision. The faculty handbook, to which Bayandor refers in his complaint, provides that, if the "[college-level] committee concurs with the decision, the decision is final . . . and no further appeal is provided." (Handbook § 3.4.5.2, Dkt. No. 27-1.) Although Bayandor argues that the provost has the power to overturn such decisions, he alleges no facts and cites to no portion of the handbook that indicates that the provost was obligated or required to respond to his letters under the circumstances. The fact that Bayandor's letters following the tenure decision went unanswered does not extend the statute of limitations as to the tenure decision or create a new cause of action for retaliation. *See Ricks*, 449 U.S. at 261. Certainly, a plaintiff cannot unilaterally extend statutes of limitation by merely continuing to send letters asking for review of a decision.

Finally, Bayandor underwent an audit in February 2017, which is within the statute of limitations. Bayandor also acknowledges, however, that the audit was ultimately resolved in his favor. (Compl. ¶ 58.) The complaint does not contain facts that plausibly allege either that the audit constituted an adverse action or that a causal link existed between Bayandor's requesting accommodations and the audit. *See A Soc'y Without A Name*, 655 F.3d at 350. Thus, the Court will dismiss Count II with prejudice, except for the retaliation claim regarding the audit, which is dismissed without prejudice.

3. **Failure to accommodate**

In order to state a claim for failure to accommodate under the Rehabilitation Act, the plaintiff must show that: (1) he was an individual with a "disability"; (2) that the [employer] had

10

notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the [employer] refused to make such accommodations. *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). Bayandor asserts that Virginia Tech failed to accommodate his request for an additional year of candidacy to apply for tenure.

Bayandor made this request before he applied for tenure and was informed that his application was denied on January 25, 2016. Accordingly, this claim is time-barred for the reasons set forth in section C.1, *supra*, and will be dismissed with prejudice.

**D. Bayandor Fails to State a Claim for Deprivation of Liberty Interest.[4]**

Employees have a constitutionally protected liberty interest in their "good name, reputation, honor, or integrity." *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972). In order to state a claim for deprivation of liberty interest, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false. *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007). A person is not deprived of "liberty" simply because they are not rehired in one job but remain free as before to seek another. *Roth*, 408 U.S. at 575. In *Sciolino*, the Fourth Circuit held that a plaintiff must allege more than the "mere presence" of stigmatizing charges that "may be available" to prospective employers in order to state a liberty interest claim; instead, a plaintiff must allege that his termination was "based on false, stigmatizing charges that are likely to be inspected by prospective employers."

---

[4] Bayandor acknowledged at the hearing that he brings this claim under 42 U.S.C. § 1983, despite his failure to cite to the statute in his complaint or his proposed amended complaint. Additionally, although Bayandor's briefing appears to argue a property interest, as well, Bayandor made clear at the hearing that he is not pursuing a property interest claim.

11

With respect to the first element of his claim, Bayandor argues—and acknowledged at the hearing that he was arguing—that denial of tenure itself qualifies as stigma. This argument fails. In a case similar to this one, *Davis v. Rao*, 982 F. Supp. 2d 683, 695 (E.D. Va. 2013), a professor alleged that a university's denial of her application for tenure violated her liberty interest in her good name, reputation, honor, or integrity. The court granted the university's motion to dismiss, reasoning: "It is clear that under *Roth*, Plaintiff may not assert a deprivation of 'liberty' simply because she was fired." *Davis*, 982 F. Supp. 2d at 695. Furthermore, "[e]ven assuming that some stigmatization has taken place, Plaintiff must assert more. Under *Sciolino* and *Echtenkamp*, Plaintiff must also allege that the charges (or basis of her tenure denial) were made public by [the university] or are likely to be inspected by prospective employers, and that they were false." *Id*. at 695 (citations omitted). Bayandor has made no allegations whatsoever to this effect. The court will dismiss his claim for deprivation of liberty interest without prejudice.

### E. Bayandor Fails to State a Claim Under 42 U.S.C. § 1981.

Plaintiff relies on his national origin to allege claims of discrimination and retaliation under § 1981 against Provost Rikakis. Section 1981 does not recognize claims based upon national origin. *St. Francis Coll. v. Al-Khazraji,* 481 U.S. 604, 606 (1987). The court assumes that plaintiff recognizes this deficiency in that his proposed amended complaint attempts to omit national origin allegations and substitute race in their stead. Thus, plaintiff's § 1981 claim for discrimination and retaliation will be dismissed without prejudice.

### F. Plaintiff's Motion for Leave to Amend.

Plaintiff seeks leave to amend his complaint, and he tendered a proposed amended complaint. (Dkt. No. 21.) As noted previously, defendants did not oppose this motion. The court will grant plaintiff leave to amend his complaint with regard to the claims that have been

12

dismissed without prejudice. However, the court will not permit the filing of the proposed amended complaint that was attached to the motion. The court notes that the proposed amended complaint still sets forth that the acts "constitute discrimination based upon national origin in violation of 42 U.S.C. § 1981" (Proposed Am. Compl. ¶ 137) and that the request for relief fails to seek any relief as to defendant Rikakis.

III. CONCLUSION

For the reasons stated above, the court will grant in part and deny in part plaintiff's motion for leave to supplement the record, will grant defendants' motion to dismiss, and will grant in part and deny in part plaintiff's motion for leave to amend. An appropriate order will follow.

Entered: March 25, 2019.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge